UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DINA HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-CV-157-RLW |
| | ) |
| ANDREW SAUL, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant.[1] | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Dina Hill ("Hill") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

## I. Background

On December 9, 2014, Hill filed an application for SSI, alleging disability beginning on January 1, 2010. (Tr. 15, 166-71). The claim was initially denied on February 26, 2015. (Tr. 15, 98, 101-07). Hill's request for a hearing was granted and a hearing before an Administrative Law Judge (ALJ) was held on February 17, 2017. The ALJ issued a written decision on July 24, 2017, upholding the denial of benefits. (Tr. 12-26). On April 27, 2018, the Appeals Council of the Social Security Administration denied Hill's request for review of the ALJ's decision (Tr. 1-6). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v.*

---

[1] Andrew Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)

*Apfel*, 530 U.S. 103, 107 (2000). Hill filed this appeal on June 26, 2018. (ECF No. 1). On October 4, 2018, Hill filed a Brief in Support of her Complaint. (ECF No. 13). The Commissioner filed a Brief in Support of the Answer on December 31, 2018. (ECF No. 18).

## II.   Decision of the ALJ

The ALJ found that Hill had the following severe impairments: chronic obstructive pulmonary disease (COPD), obesity, and major depression versus dysthymia. (Tr. 17). The ALJ, however, determined that Hill did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ found that Hill had the residual functional capacity ("RFC") to perform a limited range of light work. Hill can lift and carry 20 pounds occasionally and 10 pounds frequently. Hill can stand and/or walk for a total of four hours in an eight-hour workday and sit for a total of six hours in an eight-hour workday. Hill can never climb ladders, ropes, or scaffolds. Hill can occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs. Hill can have no concentrated exposure to pulmonary irritants, defined as no work environment where the ambient air temperature is 80 degrees Fahrenheit or below. Hill is limited to simple, routine tasks with occasional interaction with the general public, co-workers, and supervisors. (Tr. 19-20). In sum, the ALJ determined that Hill was not disabled. (Tr. 26).

## III.   Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A.   Hearing Testimony

Hill testified on September 17, 2017, as follows:

Hill was born in 1973. (Tr. 43). She dropped out of high school in the 11th grade and obtained her GED. (Tr. 44). She has been divorced since March of 2000. (Tr. 44). She has two

2

children who are 21 and 22. (Tr. 44). She lives with her children and her ex-mother-in-law. (Tr. 44). Years ago, her ex-husband and his mother had a guardianship over the children due to some issues that Hill was addressing. (Tr. 44). Her ex-husband died in 2004. (Tr. 45). She has been on Medicaid for several years. (Tr. 45). Her ex-mother-in law is 63. (Tr. 45).

She does not have a driver's license due to a prior DWI. (Tr. 46). She has not worked at all since December 2014. (Tr. 47). She previously worked for Gilster-Mary Lee as a packer and stacker of cereal. (Tr. 47-48). After that, she worked for Tri-State Water Treatment. She called people with surveys about their water. Then, she worked in customer service for Tri-State Water Treatment. (Tr. 48). Hill would sit for five or six hours for her Tri-State position. (Tr. 49). She believes she quit her position at Tri-State. (Tr. 50). Thereafter, Hill folded laundry for Tipton Textile Linen Service. (Tr. 49). She folded linens for eight-hours a day. (Tr. 49). She stopped working at the linen service because it was too hot, and it made her sick. (Tr. 49-50).

Hill believes she is disabled because she lacks stamina. She needs to sit down after doing housework because she loses her breath very easily. (Tr. 51). Her shortness of breath is caused by her COPD. (Tr. 52). She is stressed and worries a lot. (Tr. 52). Dr. Robert McCool is her psychiatrist and Dr. Gibson is her primary care doctor. (Tr. 52). Dr. McCool diagnosed Hill with major depressive disorder. (Tr. 53). On bad days, she spends the whole day in bed and only gets up to do what she "absolutely ha[s] to do." (Tr. 54). She does not shower or bathe on those days. (Tr. 55). She has bad days a couple of days a week. (Tr. 55).

She and her boyfriend broke up this week. (Tr. 55-56). They met through the Community Counseling Center, which has a day treatment program for people with mental illness. (Tr. 56).

3

Hill suffers from anxiety and panic attacks. (Tr. 58). On days where she has a panic attack, she is terrified to go anywhere. (Tr. 59).

Dr. McCool has Hill on medication and in talk therapy. (Tr. 60). Although Dr. McCool makes frequent adjustments to Hill's medications, she usually is on Zoloft. (Tr. 61).

Hill also suffers from migraines. (Tr. 62). She must be in a cool, dark room, without light. Her migraines usually last for 4-5 hours. She has migraines 2-3 times a week. (Tr. 63). She takes Ibuprofen for her migraines. (Tr. 63). Her muscles constantly ache, and she is tired. (Tr. 63). She takes one nap a day. (Tr. 63).

She has been sober for two years. (Tr. 64). She smokes less than a half of a pack a day and is trying to quit. (Tr. 64-65).

Vocational expert, Jeffrey Francis Magrowski, Ph.D., testified as follows:

The Court asked Dr. Magrowski to assume an individual with the same past work experience as Hill; with an 11th grade education and a GED; can lift 20 pounds occasionally, ten pounds frequently; can stand and walk a total of four hours in an eight hour day and sit for a total of six hours in an eight hour day; no ladders, ropes, scaffolds, or other postural; occasional balancing, kneeling, crouching, crawling, stooping, ramps, stairs; no concentrated exposure to pulmonary irritants; no work environment where there would be airborne particulates from grinding or sanding processes; no work environment with unventilated noxious fumes; no temperature above 80 degrees; and occasional interaction with the public. (Tr. 69). Dr. Magrowski found that such an individual could not perform any of Hill's past work. However, such an individual could perform jobs such as a table work (sedentary and unskilled), optical goods assembler (sedentary and unskilled), and scanner or document preparer (sedentary and unskilled). (Tr. 69-70). If the hypothetical person were also limited to simple, routine tasks and

4

occasional interaction with coworkers and supervisors, Dr. Magrowski stated then such a person would still be able to perform at least the three jobs he outlined. (Tr. 70). Dr. Magrowski indicated that a worker could be absent from work between three to five days per year and customary breaks are ten to fifteen minutes every two hours and thirty to forty-five minutes for lunch. (Tr. 70). Dr. Magrowski said a worker could be off-task for about nine percent of a workday (or thirty minutes in an eight-hour workday). (Tr. 70).

## IV. Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d);

Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[2] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008); *see also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. *Id.*; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.*; *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d

---

[2] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

6

853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.*; *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This Court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

## V.     Discussion

7

## A. Substantial Evidence Supports ALJ Opinion of No Disabling Mental Impairments

Hill testified at the February 2017 administrative hearing that she had feelings of depression every day, worried about everything, had feelings of guilt and worthlessness, and crying spells, and spent the day in bed twice a week to due exacerbated depression. (Tr. 21, 52-55). Hill stated that she had suicidal feelings but did not act on those feelings because of her children. (Tr. 55). She also indicated that she suffered from anxiety and panic attacks. After considering the record as a whole, however, the ALJ determined that Hill's statements regarding the intensity, persistence, and limiting effects of those symptoms were not consistent with the overall evidence in the record. (Tr. 21).

The ALJ noted that Hill sought treatment on December 8, 2014—the day before her SSI application date—from her psychiatrist Robert McCool, M.D. (Tr. 21, 300). At that time, Hill had been off her psychotropic medications for about a month and a half and complained of worsening depression symptoms, including having suicidal thoughts and paranoia. (Tr. 21-22, 300). Dr. McCool prescribed Hill to resume her Zoloft prescription at a lower dose, and then increase it after three days. (Tr. 22, 300). On December 15, 2014, Hill reported to Dr. McCool that she was tolerating the Zoloft except for occasional headaches. (Tr. 22, 299). Dr. McCool ordered Hill to continue with medication and added amitriptyline. (Tr. 22, 299).

The ALJ further observed that Hill followed up with Dr. McCool every one to two months from December 2014 through January 2017 for psychiatric visits. (Tr. 22, 298, 344-73). The ALJ noted that Hill expressed some ongoing complaints of depressive symptoms, including thoughts of self-harm, but that those symptoms were usually limited to family issues and relationship difficulties. (Tr. 298, 344-73). For example, Hill reported superficially cutting her wrists when her boyfriend broke up with her in May 2016. Similarly, on other occasions, she

8

complained of issues regarding family problems and, in June and July 2016, of the recent death of her father. (Tr. 22, 344, 351, 353-54). In May 2015, Hill admitted to having a relapse of alcohol use, causing her to seek attention at the emergency department for depressed mood and suicidal ideation. (Tr. 22, 329-30, 369). The Court holds that situational mental health issues are not disabling. *See Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2014) (claimant found not disabled where ALJ considered "situational stressors related to legal problems and family issues"); *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (finding no error in the ALJ's determination that claimant was not disabled based upon mental impairments where "[t]he medical record supports the conclusion that any depression experienced by Gates was situational in nature, related to marital issues, and improved with a regimen of medication and counseling."). On other occasions, Hill's increased depression was attributed to Topamax, and her mood improved once she discontinued that medication. (Tr. 22, 355-56). Thus, Hill also cannot claim disability based upon such medication-induced depressive episodes.

In addition, the ALJ noted that Hill's mental status examinations typically were within normal limits, except for intermittent mildly dysthymic or anxious mood and affect. (Tr. 22, 298-99, 344-373). Dr. McCool consistently found that Hill was cooperative and appropriately dressed; she often denied suicidal ideation and exhibited no psychotic symptoms; she was alert and oriented; and her insight and judgment were fair and intact. (Tr. 22, 289-99, 344-73). Although Dr. McCool made periodic adjustments to Hill's medications, she largely remained on Zoloft and Ambien at bedtime, as needed. (Tr. 22, 298-99, 344-373). *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) ("the ALJ found there was some stabilization in Todd's symptoms when he was compliant with medications, and we agree"). The ALJ noted there was

9

no evidence Dr. McCool referred Hill for treatment in the emergency room or inpatient hospitalization for decompensation in her mental condition. (Tr. 22).

The ALJ also acknowledged that Hill was a patient in regular counseling from October 2015 through January 2017. (Tr. 22, 374-730). Despite her frequent therapy sessions, Hill's sessions were uneventful and unremarkable. She discussed family and relationship issues and her stressful financial situation. (Tr. 22, 403, 413, 415, 421, 425, 431, 436, 515, 657). Hill's mental status examinations were consistent with Dr. McCool's findings in that she presented with appropriate dress, normal hygiene and grooming, appropriate eye contact, normal posture, and speech that was within normal limits. (Tr. 22, 403, 413, 421, 470, 516, 551, 562, 600, 648, 657, 716, 725). Although she was sometimes depressed, Hill's thought processes were logical, and she presented no evidence of psychosis. (Tr. 22, 403, 413, 421, 470, 516, 551, 562, 600, 657, 716, 725).

The ALJ addressed Hill's alleged suicide attempt when she cut her left wrist in May 2016 over her break-up with her boyfriend. Hill was referred for admission to the Intensive Level Community Psychiatric Rehabilitation Center (ILCPRC) program for 50 days, from May 18, 2016 through July 6, 2016. The ALJ noted that Hill failed to complete a psychiatric evaluation at the hospital or walk-in clinic and was reluctant toward treatment. Hill would often "no show" at meetings or did not meet with her counselor for an extended period. (Tr. 22, 438). Hill's ILCPRC notes stated that Hill was "not interested in obtaining employment" and she continued to rely on her children and ex-mother-in-law for financial support. (Tr. 22, 438, 515). Hill refused to participate in skills training and did not want to be referred for Illinois state agency services because of "interference with disability." (Tr. 22, 438, 515, 517). *See Julin v. Colvin*, 826 F.3d 1082, 1087-88 (8th Cir. 2016) ("There was also evidence from which the ALJ could

infer that [claimant's] claims were overstated and not entirely reliable" ... including that claimant "had to 'get all [her] ducks in a row' to apply for disability."); *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (claimant "had objectively determinable impairments, but also noted that her incentive to work might be inhibited by her long-term disability check of $1,700 per month); *Gaddis v. Chater,* 76 F.3d 893, 896 (8th Cir.1996) (allowing an ALJ to judge credibility based on a strong element of secondary gain). She was discharged from treatment at ILCPRC after 50 days "due to no longer meeting criteria and regularly not attending appointments." (Tr. 438). *Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) ("[claimant's] inability to follow a recommended course of treatment also weighs against her credibility."). While the ALJ stated that Hill's discharge from ILCPRC due to noncompliance detracted from the weight he gave to her psychiatric complaints, he still accorded her allegations some weight and found sufficient evidence to support restricting Hill to simple, routine tasks with limited social interaction. (Tr. 22-23).

Further, the ALJ found other evidence detracted from Hill's subjective complaints of disabling symptoms. For example, Hill's work history was sporadic prior to her alleged disability onset. Hill's underwhelming work history raises the question as to whether her unemployment was due to her medical impairments. (Tr. 23, 175-80). The Court holds that the ALJ reasonably concluded that Hill's irregular and intermittent employment history prior to her alleged disability date weighed against her allegation that the was unable to work because of her medical impairments. (Tr. 23). *Julin*, 826 F.3d at 1087 ("[Claimant's] poor employment history suggested a lack of motivation to work. ... The ALJ reasonably concluded that [claimant's] 'sporadic work history raises some questions as to whether the current unemployment is truly the result of medical problems.'") (internal citations omitted); *Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014) ("The ALJ found Todd had a sporadic work history for multiple employers, had not made

11

significant attempts to return to work, and had not sought or received any vocational or rehabilitative training to assist with his employment. Consequently, the ALJ determined Todd did not demonstrate a strong motivation to return to the workplace."); *Wildman v. Astrue*, 596 F.3d 959, 968-69 (8th Cir. 2010) ("[S]ubstantial evidence in the record as a whole supports the ALJ's determinations that Wildman had a sporadic work history before her disability onset date and that Wildman was noncompliant with her doctor's instructions to take her medications, follow her diet, and totally abstain from drugs and alcohol. These are valid reasons for discrediting Wildman's subjective complaints.").

Further, ALJ considered Hill's activities of daily living and discerned that her daily activities were not illustrative of the limitations one would expect, given her complaints of disabling symptoms and limitations. (Tr. 23). Hill reported that she could prepare simple meals, perform household tasks (e.g., dusting and folding laundry), shop, drive, and manage her finances. (Tr. 23, 218-21). On a regular basis, Hill watched television, talked with family, took her medication, lay down or nap, performed chores, read, cared for pets, listened to music, socialized with friends, played board games and cards, and used the computer for one to two hours at a time. (Tr. 19, 23, 218-21). The ALJ found that Hill's capacity to perform these tasks independently strongly indicated she retained the mental and physical capacity to perform basic work activity. (Tr. 23). *See Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017) (ALJ considered inconsistencies between Bryant's complaints, personal history, and the medical record and determined his daily activities did not support a finding of disability); *Reece v. Colvin*, 834 F.3d 904, 910 (8th Cir. 2016) (citing *Dunahoo v. Apfel*, 241 F.3d 1033, 1038–39 (8th Cir. 2001)) ("Evidence of daily activities that are inconsistent with allegations of disabling pain may be considered in judging the credibility of such complaints."). Accordingly, the Court holds

12

the ALJ considered this evidence in concluding the record failed to support Hill's allegation her medical impairments precluded her from working.

B. **Evaluation of Medical Opinions Regarding Plaintiff's Mental Limitations**

Hill argues that the ALJ improperly accorded too little weight to Dr. McCool's opinion regarding her work-related mental limitations. (ECF No. 13 at 12-20). Hill further claims that the ALJ improperly relied on the opinion of State agency psychological consultant Raphael Smith, Psy.D., because it was outdated. (ECF No. 13 at 18-20.)

On February 8, 2017, Dr. Robert McCool filled out a Medical Source Statement-Mental for Hill. (Tr. 732-33). Therein, Dr. McCool indicated Hill was moderately limited in her ability to understand and remember detailed instructions.; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended period; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to set realistic goals or make plans independently of others. (Tr. 732-33). Dr. McCool found Hill was mildly limited in her ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to travel in unfamiliar places or use public transportation. (Tr. 732-33).

The opinion of a treating physician is generally accorded "controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques

13

and is not inconsistent with the other substantial evidence in the record." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)); *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). Where an ALJ assigns less than controlling weight to the opinion of a treating source, the ALJ must "give good reasons" for doing so. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2)); *Chesser*, 858 F.3d at 1164. Good reasons for assigning lesser weight to the opinion of a treating source exist where "the treating physician's opinions are themselves inconsistent," *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996), or where "other medical assessments 'are supported by better or more thorough medical evidence,'" *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (quoting *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997)).

Here, the ALJ acknowledged Dr. McCool's medical source statement in his opinion denying disability benefits. The ALJ stated that he accorded no weight to Dr. McCool's opinions, particularly his suggestion that Hill had moderate limitations in certain aspects of mental functioning, observing that the mental health treatment record showed Hill kept her psychiatric appointments and stayed on task during her therapy sessions. (Tr. 24, 298-99, 344-730, 732-33). In addition, the ALJ acknowledged Dr. McCool's suggested limitations in mental status examinations, lack of psychiatric hospitalizations, and her activities of daily living. (Tr. 24, 298-99, 344-73, 403, 413, 421, 470, 516, 551, 562, 600, 648, 657, 716, 725). *See Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("Thomas's self-reported activities of daily living provided additional reasons for the ALJ to discredit Dr. Hollis's pessimistic views of her abilities."); *Reece*, 834 F.3d at 909 (8th Cir. 2016) ("The ALJ found Dr. Robinette's clinical and laboratory findings and ultimate opinion to be 'highly inconsistent with the objective medical evidence in the record as well as his own treatment notes.'"). The Court holds that the ALJ

14

appropriately weighed Dr. McCool's opinions in the context of the overall record, and reasonably discounted the moderate mental limitations Dr. McCool suggested.

Given that he discounted the opinion of Dr. McCool, the ALJ instead concluded that State agency psychological consultant Raphael Smith, Psy.D., properly determined that Hill's mental impairments were not disabling. (Tr. 24, 91-94). The regulations provide that ALJs are to consider the opinions of State agency psychological consultants "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1); *see also* 20 C.F.R. § 416.927(e) ("The rules in § 416.913a apply except that when an administrative law judge gives controlling weight to a treating source's medical opinion, the administrative law judge is not required to explain in the decision the weight he or she gave to the prior administrative medical findings in the claim."). Dr. Smith determined that Hill had mild restriction of activities of daily living, moderate difficulty in maintaining social functioning, moderate difficulty in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (Tr. 91). Dr. Smith opined that Hill had the ability to understand, remember, and carry out simple instructions and tasks in an environment that did not require close or frequent contacts with the public. (Tr. 93-94).[3] The ALJ gave "great weight" to the opinion of Dr. Smith, finding that his opinion was "consistent with the medical evidence as a whole. (Tr. 24). The ALJ noted that Hill's "mental status examinations were overall normal, and decompensations were usually temporary and situational related to relationship break-ups." (Tr. 24). *See* 20 C.F.R. § 416.913a(b)(1); *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The state agency physicians' opinions were consistent with the other medical evidence and it was proper for the

---

[3] Amy Franklin, SDM, likewise reviewed Hill's file and determined that Hill was not disabled. (Tr. 96).

15

ALJ to rely on them, in part, in formulating Mabry's RFC."); *Stormo v. Barnhart*, 377 F.3d 801, 807–08 (8th Cir.2004) (the ALJ properly used evidence from state agency doctors in supporting the finding that the claimant's mental impairments were not disabling); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) ("Contrary to Kamann's assertion that the record contained insufficient evidence to support a RFC determination, we find the ALJ thoroughly reviewed years of medical evidence on record and issued a finding consistent with the views of Dr. Pressner, the reviewing agency psychologist.").

Further, the Court holds that it was not reversible error for the ALJ to rely on Dr. Smith's allegedly "outdated" report.[4] However, this criticism is not well-founded. Hill cites to no support for the position that a consultative expert's opinion should be discounted simply because evidence was obtained subsequent to the opinion. *Martin v. Berryhill*, No. 1:17-CV-00072 JAR, 2018 WL 4383365, at *6 (E.D. Mo. Sept. 14, 2018) ("Plaintiff does not provide, and the Court is not aware of, any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records.");*Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir.2011) (internal citations and quotations omitted) ("While an ALJ should recontact a treating or consulting physician if a critical issue is undeveloped, the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."); *Gerard v. Berryhill*, No. 4:16 CV 13 ACL, 2017 WL 1196482, at *8 (E.D. Mo. Mar. 31, 2017). Thus, the Court finds that Dr. Smith's opinion supports the ALJ's conclusion that Hill was capable of a range of unskilled work, despite her alleged mental impairments, and was less limited than Dr. McCool

---

[4] Dr. Smith's report was issued on February 18, 2015.

suggested. (Tr. 24, 91-94). Indeed, the Court holds that the ALJ properly considered Dr. Smith's opinion in light of the overall record, including the subsequent medical evidence.

Thus, the Court finds that the ALJ was justified in discounting the moderate mental impairments identified by Dr. McCool because they were not supported by the record, including his own notes. Rather, the Court finds the ALJ properly limited Hill to work involving only simple, routine tasks with occasional interaction with the general public, co-workers, and supervisors. The ALJ thus reached the reasonable conclusion that Hill was not disabled by her mental impairments.

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this 6th day of August, 2019.

*/s/ Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE